USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/03/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SARA KIELLY,

                              Plaintiff,

    -against-

SEAN P. DONOVAN,

                              Defendant.

No. 22-CV-8981 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Sara Kielly ("Plaintiff") brings this action under 42 U.S.C. § 1983 against Defendant Sean P. Donovan ("Defendant"). Plaintiff alleges that Defendant was deliberately indifferent to her suicidal ideations while she was confined at Downstate Correctional Facility in violation of the Eighth Amendment. Presently before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 56.)

For the following reasons, Defendant's motion is GRANTED.

## FACTUAL BACKGROUND

Plaintiff and Defendant submitted briefs, statements of material facts pursuant to Local Rule 56.1, responses to the opposing statements of material facts, and the record and exhibits from discovery in the instant proceeding, which reflect the following factual background.

### I.    Plaintiff's Incarceration at Downstate Correctional Facility

At all times relevant to this action, Plaintiff was an inmate in the custody and care of the New York State Department of Corrections and Community Supervision ("DOCCS"). (ECF No. 59, "Def. 56.1," ¶ 1.) While incarcerated, Plaintiff was assigned two department identification numbers ("DIN"): 12B3915 and 21G0314. (*Id*. ¶ 4.)

1

On October 21, 2020, Plaintiff was incarcerated at Downstate Correctional Facility. (*Id*. ¶ 2.) Downstate Correctional Facility served as a temporary transit facility for inmates until its closure in March 2022. (ECF No. 62, "Pl. Opp.," at 1.) While Downstate Correctional Facility was in operation, it maintained a functioning grievance process available to incarcerated individuals. (Def. 56.1 ¶ 5.) Incarcerated individuals at Downstate Correctional Facility also had access to the Central Office Review Committee ("CORC") to appeal facility-level grievance determinations. (*Id*. ¶ 6.) During Plaintiff's thirteen years of incarceration, she has utilized the grievance process and is aware how the grievance system operates. (ECF No. 63, "Pl. Counter 56.1," ¶ 7.) Plaintiff, however, was unaware whether Downstate Correctional Facility had a functioning grievance process. (*Id*. ¶ 5.)

## II. Plaintiff's Suicide Attempt and Subsequent Recovery

In the late morning to early afternoon of October 21, 2020, Plaintiff began to experience suicidal ideations. (Feliu Decl., Ex. A, at 49: 2–13.) Plaintiff testified that she expressed concern over her suicidal ideations to Defendant Donovan, a Downstate Correctional Facility Officer, while he was making his rounds. (*Id*. at 49:14–18.) Upon learning of Plaintiff's suicidal ideations, Defendant Donovan allegedly laughed and told Plaintiff to "go ahead and kill yourself." (*Id*. at 51:17–24.) Defendant Donovan, however, testified that the only conversation he had with Plaintiff pertained to seeking medical assistance after her suicide attempt. (Feliu Decl., Ex. D, at 29:3–13.) Shortly thereafter, Plaintiff broke her glasses and used the metal frame to sever her testicular artery. (Feliu Decl., Ex. A, at 53:5–21.) While calling out for help, Plaintiff also attempted to swallow a portion of her glasses. (*Id*. at 54:9–12; 55:9–12.)

After ten-to-twenty-minutes of calling for help, Plaintiff was taken from her cell by a Downstate Correctional Facility Sergeant to the infirmary. (*Id*. at 62:4–11; 66:5–16.) Plaintiff was

2

subsequently transported by ambulance to St. Luke's Cornwall Hospital in Newburgh, NY, where she underwent surgery that same day.  (Dratch Decl., Ex. D.)  On October 23, 2020, Plaintiff was discharged and sent to Albany Medical Center.  (Dratch Decl., Exs. E–G.)  Plaintiff was thereby transported to Great Meadow Correctional Facility on October 27, 2020, where she was placed into the infirmary for medical and suicide observation.  (Feliu Decl., Ex. A, 79:13–80:13.)  On or about November 15, 2020, Plaintiff was eventually transferred to Central New York Psychiatric Center, where she remained incarcerated until January 2021.  (*Id*. 84:8–16.)

## III.    Plaintiff's Grievance Against Defendant Donovan

On November 18, 2020, Plaintiff submitted a grievance against Defendant Donovan to the Great Meadow Correctional Facility Grievance Supervisor.  (Dratch Decl., Ex. A.)  Under 7 N.Y.C.R.R. § 701.5, an incarcerated individual must submit a complaint to the Inmate Grievance Resolution Committee ("IGRC") within twenty-one calendar days of an alleged occurrence on an inmate grievance complaint form.  (Seguin Decl. ¶ 5.)  Plaintiff submitted her grievance twenty-eight days after the October 21, 2020 incident occurred.  (Feliu Decl., Ex. A, 90:18–25.)  However, Plaintiff requested an extension, explaining that she could not file a timely grievance because her suicide attempt was followed by a period of medical recovery and monitoring, during which she was transferred among several facilities.  (Dratch Decl., Ex. A. at 1.)

After Plaintiff submitted her grievance, she received no response.  (Pl. Opp. at 3.)  Plaintiff thereby requested on December 9, 2020, that her grievance be sent directly to the Great Meadow Correctional Facility Superintendent.  (*Id*.)  Plaintiff again alleges that she received no response. (*Id*.)  Plaintiff ultimately sent a letter to the Great Meadow Correctional Facility Grievance Supervisor on January 9, 2021, requesting that her grievance be sent directly to CORC.  (*Id*. at 3–4.)  Despite Plaintiff making such a request, DOCCS has no record of any grievance being sent to

CORC.  (Seguin Decl., Exs. A–B.)  A complete review of CORC's active and closed grievance records, conducted under both of Plaintiff's DINs, revealed no grievance concerning the October 21, 2020 incident.  (*Id*.)

## PROCEDURAL HISTORY

On October 20, 2022, Plaintiff commenced this action against Defendant.  (ECF No. 1.)  On June 6, 2025, Defendant filed his motion for summary judgment, along with a memorandum of law in support and Rule 56.1 statement of material facts.  (ECF Nos. 56–59.)  Plaintiff opposed Defendant's motion and also submitted a counterstatement to Defendants' Rule 56.1 statement of material facts.  (ECF Nos. 62–63.)  Defendant filed a reply memorandum in further support of his motion.  (ECF No. 64).

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of pointing to evidence in the record, inclusive of deposition testimony, documents, affidavits, and declarations, *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing… that [the] adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  If the moving party fulfills its preliminary burden, the onus then shifts to the nonmoving party to raise the existence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must "draw all rational inferences in the non-movant's favor" while reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (noting that "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment"). Rather, in answering the primary inquiry of "whether there is the need for a trial," the court must determine "whether a fair-minded jury *could* return a verdict for the plaintiff [or non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 250, 252. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## DISCUSSION

Defendant moves for summary judgment on the sole ground that Plaintiff failed to exhaust her administrative remedies before filing this action. (ECF No. 57, "Def. Mot.," at 5.) Defendant argues that Plaintiff failed to exhaust her administrative remedies because she (1) submitted an untimely grievance and (2) filed this action before receiving a decision from CORC. (*Id*. at 7.) In the event the Court determines that Plaintiff did not exhaust her administrative remedies, Plaintiff argues that she was not required to exhaust because such remedies were unavailable to her. (Pl. Opp. at 5.) The Court now addresses each claim in turn.

### I.    Administrative Exhaustion

The Prison Litigation Reform Act (the "PLRA") prohibits incarcerated individuals from bringing an action under 42 U.S.C. § 1983 "until such administrative remedies as are available are exhausted." *Smith v. Cordero*, 2024 WL 2802860, at *2 (S.D.N.Y. May 28, 2024) (citing 42 U.S.C. § 1997e(a)). When an incarcerated individual is in DOCCS custody, the relevant administrative remedy is the Inmate Grievance Program ("IGP"). *See Garcia v. Heath*, 74 F.4th 44, 46 (2nd. Cir. 2023) (citing 7 N.Y.C.R.R. § 701.5). The IGP employs a three-step process that incarcerated individuals must follow when submitting grievances: (1) filing an initial complaint to be reviewed by the IGRC; (2) appealing any adverse IGRC determination to the facility superintendent; and (3) appealing any adverse superintendent determination to CORC. *Id*. (citing 7 N.Y.C.R.R. §§ 701.1(c), 701.5.) When an incarcerated individual "does not properly exhaust [her] administrative remedies before filing suit, the action must be dismissed." *Terry v. Hulse*, 2018 WL 4682784, at *7 (S.D.N.Y. 2018) (quoting *Mateo v. Alexander*, 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010)). Indeed, the PLRA's exhaustion requirement is "mandatory" and thus "foreclose[es] judicial discretion." *Ross v. Blake*, 578 U.S. 632, 639 (2016). However, because failure to exhaust is an affirmative defense, "defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

### a. Timeliness of Plaintiff's Grievance

Defendant first argues that summary judgment is warranted because Plaintiff failed to timely submit her grievance to the IGRC. (Def. Mot. at 7.) The IGP requires an incarcerated individual to submit a grievance to the IGRC within twenty-one calendar days of the alleged occurrence on the inmate grievance complaint form. N.Y.C.R.R. § 701.5(a). Plaintiff, however,

6

submitted her grievance twenty-eight days after the alleged October 21, 2020 incident. (Feliu Decl., Ex. A, 90:18–25.) Nevertheless, an incarcerated individual may request an extension to file a grievance on the basis of "mitigating circumstances," so long as the request is submitted within forty-five days of the alleged occurrence. *See McRae v. Cordero*, 2018 WL 3611964, at \*4 (S.D.N.Y. July 26, 2018) (citing 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)). It is undisputed that Plaintiff's initial grievance was dated twenty-eight days after the October 21, 2020 incident. (Def. Mot. at 7.) Plaintiff's grievance nevertheless requested an extension on the basis of mitigating circumstances, including her suicide attempt, the resulting period of recovery and monitoring, and her transfers among various facilities. (Dratch Decl., Ex. A. at 1.) Plaintiff also provides ample evidence to support these assertions. (*See* Dratch Decl., Exs. D–G.)

The Court therefore finds that Plaintiff filed her grievance in a timely fashion due to the mitigating circumstances arising from her suicide attempt. *See Santos v. Schroeder*, 2021 WL 931959, at \*6 (N.D.N.Y. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 930709 (N.D.N.Y. Mar. 11, 2021) (acknowledging "prolonged medical treatment" as "mitigating circumstances").

### b. Whether Plaintiff Properly Submitted her Grievance Appeal to CORC

Defendant next argues that summary judgment is warranted because Plaintiff commenced this action before receiving an appeal decision from CORC. (Def. Mot. at 8.) Plaintiff responds by asserting that she complied with the three-step procedure prescribed by 7 N.Y.C.R.R. § 701.5. (Pl. Opp. at 5.) However, because Plaintiff failed to receive a response from the IGRC, the Great Meadow Correctional Facility Superintendent, and CORC, she filed the instance action. (*Id*.) The dispositive question is whether Plaintiff properly submitted her grievance appeal to CORC.

As described above, the IGP employs a three-step process that incarcerated individuals must follow when submitting grievances. *See Garcia*, 74 F.4th at 46 (citing 7 N.Y.C.R.R. § 701.5). As relevant here, when appealing an adverse superintendent's determination to CORC, the IGP requires an incarcerated individual to forward the appeal to the facility grievance clerk. *Ruiz v. Link*, 2022 WL 3020254, at *4 (S.D.N.Y. July 29, 2022) (citing 7 N.Y.C.R.R. § 701.8(g)-(h)). Upon receiving grievances, DOCCS is required to maintain grievance files for the current calendar year and the previous four calendar years whenever an incarcerated individual appeals a grievance to CORC. 7 N.Y.C.R.R. § 701.6(k)(3).

In the instant action, Plaintiff claims to have submitted her grievance to the IGRC, the Great Meadow Correctional Facility Superintendent, and CORC. (*See* Dratch Decl., Exs. A–C.) Plaintiff also addressed her CORC appeal to the Great Meadow Correctional Facility Grievance Supervisor. (*See* Dratch Decl., Ex. C.) When reviewing the record, however, it is unclear whether Plaintiff properly submitted her grievance appeal to CORC. Notably, Defendant's submission includes the declaration of Rachel Seguin, the Director of the IGP, who affirms to have conducted a search of Plaintiff's CORC case records. (Seguin Decl. ¶¶ 3, 14, 16.) To conduct the search, Ms. Seguin used Plaintiff's DINs. (*Id*. ¶ 9.) The results of Ms. Seguin's search indicate that CORC never received an appeal from Plaintiff pertaining to the October 21, 2020 incident. (*See* Seguin Decl. Exs. A–B.) Despite Plaintiff submitting as evidence her grievance appeal, nothing in the record indicates whether her appeal "was actually mailed, intercepted, or ignored" because "DOCCS has no record of any appeal filed with CORC." *Litchmore v. Williams*, 2013 WL 3975956, at *6 (S.D.N.Y. Aug. 5, 2013).

Consequently, Plaintiff has failed to provide sufficient evidence demonstrating that she properly followed the IGP procedure and, therefore, has not exhausted her administrative

remedies. *See Ruiz*, 2022 WL 3020254, at *4 (granting defendant's summary judgment where defendant provided declaration from Ms. Seguin demonstrating that "CORC never received appeal of Plaintiff's grievance"); *Jackson v. Jackson*, 2021 WL 981849, at *4 (S.D.N.Y. Mar. 16, 2021) (granting defendant's summary judgment where Ms. Seguin affirmatively represented that CORC had "no record of Plaintiff taking the final step of appealing the Superintendent's decision to CORC"); *Adams v. George*, 2020 WL 5504472, at *6 (S.D.N.Y. Sept. 8, 2020) (dismissing plaintiff's claims because Ms. Seguin's declaration demonstrated that "the grievances referenced in Plaintiff's complaint… [were] not… appealed to CORC").

## II.    Availability of Administrative Remedies

Although the Supreme Court has held that exhaustion is mandatory, there are circumstances under which administrative remedies may be deemed "unavailable" to an incarcerated individual, such that they are not required to exhaust. *Ross*, 578 U.S. at 642. The Supreme Court has recognized three situations in which administrative remedies may be unavailable: (1) when the process functions as a "simple dead end," with officers either unable or consistently unwilling to provide relief to aggrieved inmates; (2) when the administrative scheme is so opaque that it is, in practice, unusable; and (3) when prison administrators prevent inmates from utilizing the grievance process through machination, misrepresentation, or intimidation. *Id.* at 643–44. "If the defendant has met its burden of establishing the existence and applicability of the grievance policy, the plaintiff bears the burden of establishing *de facto* unavailability." *Saeli v. Chautauqua County*, 36 F.4th 445, 453 (2d Cir. 2022).

First, nothing in the record suggests that Plaintiff failed to receive a response from CORC because the IGP process was operating at a "dead end." The record instead indicates that it is unclear whether Plaintiff properly submitted her grievance appeal to CORC. As explained above,

Ms. Seguin has affirmed that CORC has no record of Plaintiff's grievance appeal. (Seguin Decl., Exs. A–B.) Moreover, Ms. Seguin's declaration demonstrates that the IGP has processed nearly fifty grievances filed by Plaintiff, indicating that the process is not operating at a "dead end." (*Id*.) Indeed, Plaintiff fails to present "any evidence about the outcomes in the grievance system in general" or "show[] that prison officials are consistently unwilling to grant relief." *Ruiz*, 2022 WL 3020254, at *5 (citing *White v. Veile*, 709 F. App'x 35, 38 (2d Cir. 2017) (summary order)).

Second, as set out above, the relevant IGP procedure is not opaque. The IGP clearly sets out the process for appealing a grievance to CORC through the facility grievance clerk. *See* 7 N.Y.C.R.R. § 701.5. Ms. Seguin's declaration further establishes that Plaintiff is familiar with the IGP process, as demonstrated by Plaintiff's history of filing numerous grievances. (Seguin Decl., Exs. A–B.) Finally, while Plaintiff insinuates that her grievance submissions may have been tampered with, she offers no evidentiary support for this claim. (Pl. Opp. at 6.) Such an assertion without evidence fails to demonstrate that the IGP was unavailable to Plaintiff. *See Davis v. Grant*, 2019 WL 498277, at *9 (S.D.N.Y. Feb. 8, 2019) (granting defendant's summary judgment where "[p]laintiff offer[ed] no evidence that any particular officer thwarted [their] attempts to file [their] grievance or appeal"); *Litchmore*, 2013 WL 3975956, at *6 (rejecting plaintiff's unavailability argument because there was "no evidence… that the plaintiff's appeal was actually mailed, intercepted, or ignored" and "DOCCS has no record of any appeal filed with CORC").

A lack of evidence that Plaintiff submitted or followed up on her CORC appeal reflects not unavailability of remedies, but Plaintiff's failure to exhaust those remedies. The Court therefore finds that Plaintiff failed to fully exhaust all available administrative remedies. *See Ruiz*, 2022 WL 3020254, at *6 (granting defendant's summary judgment where plaintiff "failed to fully

exhaust the administrative remedies available" because of the "lack of evidence that [p]laintiff's appeal to CORC was ever filed[] or ever followed up on").

## CONCLUSION

For the foregoing reasons, Defendant Sean P. Donovan's motion for summary judgment is GRANTED.  The Court respectfully directs the Clerk of Court to enter judgment in favor of Defendant, terminate the motion at ECF No. 56, and close this case.

SO ORDERED,

Dated: December 3, 2025
  White Plains, NY

_____
Nelson S. Román, U.S.D.J.